# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA HUGHES,<br><br>                Plaintiff,<br><br>   v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>           Defendant. | ) 1:04-cv-6622-SMS<br>)<br>) DECISION AND ORDER DENYING<br>) PLAINTIFF'S SOCIAL SECURITY<br>) COMPLAINT (DOC. 1)<br>)<br>) ORDER DIRECTING THE ENTRY OF<br>) JUDGMENT FOR DEFENDANT JO ANNE B.<br>) BARNHART, COMMISSIONER OF SOCIAL<br>) SECURITY, AND AGAINST PLAINTIFF<br>) ANNA HUGHES<br>)<br>)<br>) |

Plaintiff is proceeding with counsel against the Commissioner of Social Security. Plaintiff seeks judicial review of a final decision of the Commissioner denying an application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (the Act). Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment. The matter is currently before the Court on the parties' briefs, which have been submitted without oral argument to the Honorable Sandra M. Snyder, United States Magistrate Judge.

1

1    <u>Prior Proceedings</u>

2        Plaintiff filed an application for SSI benefits on June 20,

3    2002. (A.R. at 90-94.) Plaintiff's application was denied

4    initially and on reconsideration. (A.R. at 73-76, 78-82.)

5    Plaintiff requested a hearing before an Administrative Law Judge

6    (ALJ) of the Social Security Administration (SSA). On October 29,

7    2003, Plaintiff appeared with counsel and testified before the

8    ALJ, the Honorable Richard C. Goodwin. (A.R. at 37-58.) The ALJ

9    issued a decision denying Plaintiff's application for benefits on

10   December 13, 2002. (A.R. at 15-27.) Plaintiff appealed the ALJ's

11   decision to the Appeals Council. Additional evidence was

12   submitted to the Appeals Council on August 29, 2004. (A.R. at 7.)

13   On October 22, 2004, the Appeals Council denied Plaintiff's

14   request for review. (A.R. at 4-6.)

15       On December 2, 2004, Plaintiff filed the complaint in the

16   instant action. The administrative record was filed on March 28,

17   2005. Plaintiff filed an opening brief on July 26, 2005. On

18   August 24, 2005, Defendant filed a brief in opposition. Plaintiff

19   filed a reply brief on September 5, 2005.

20                    <u>Administrative Findings</u>

21       The ALJ concluded that Plaintiff's impairments, consisting

22   of obstructive sleep apnea, obesity, spondylolysis with grade 3

23   anterolisthesis of L-5 on S-1 with low back pain, and depressive

24   disorder, were severe but did not medically equal a listed

25   impairment. (A.R. at 20.) The ALJ found that Plaintiff's residual

26   functional capacity (RFC) was to lift and carry frequently ten

27   pounds; sit, stand, and walk six hours in an eight-hour workday;

28   and occasionally climb, balance, stoop, kneel, crouch, and crawl;

                                    2

and he found that Plaintiff retained the mental ability to maintain concentration and attention; relate appropriately to others; understand, remember, and carry out simple instructions; and respond to usual work situations. (A.R. at 26.)

Although Plaintiff's exertional and non-exertional impairments precluded her from performing the full range of light work, she was capable of performing a significant range of light work as defined in 20 C.F.R. § 416.967 (2003.)[1] (A.R. at 27.) The ALJ concluded that Plaintiff was not disabled because there were a significant number of jobs in the national economy that she could perform. (A.R. at 26.) These included (1) cashier II, of which there were 750 sedentary to light level jobs in the local economy, and (2) ticket seller, of which there were 500 light level jobs in the local economy. (A.R. at 27.) The ALJ further determined that Plaintiff's allegations regarding her limitations were not totally credible. (A.R. at 26.) Thus, Plaintiff was not disabled.

<u>Issues Presented</u>

The following issues are presented for decision:

1) Whether the ALJ properly discredited Plaintiff's subjective complaints;

2) Whether the ALJ properly rejected the functional limitations proposed by Plaintiff's treating sources in determining Plaintiff's residual functional capacity; and

3) Whether the finding that Plaintiff could perform work in the national economy was supported by substantial evidence.

---

[1]All references to the Code of Federal Regulations are to the 2003 version unless otherwise stated.

1                                    Facts

2         I. Medical History

3         Between March 2001 and November 2002, Plaintiff's treating

4    physician, Dr. Malabed-Verona, diagnosed her with diabetes,

5    abnormal weight gain, shoulder pain, muscle spasms,

6    low back pain, asthma, right hip pain, and hypertension. (A.R. at

7    164, 176, 179-182, 185-186, 192.) On March 16, 2001, Dr.

8    Malabed-Verona noted that Plaintiff was "feeling overall

9    improved," that she had lost nine pounds, and that her blood

10   sugars and hypertension were well controlled. (A.R. at 192.) On

11   May 4, 2001, she noted that Plaintiff felt lightheaded and was

12   having back pain that worsened with sitting and standing. (A.R.

13   at 186.) On May 7, 2001, she noted that there had been some

14   improvement in Plaintiff's pain, but that it was not totally

15   resolved. (A.R. at 185.) On January 11, 2002, Dr. Malabed-Verona

16   reported that Plaintiff was "not feeling depressed at all." (A.R.

17   at 181.) On April 29, 2002, Dr. Malabed-Verona noted that

18   Plaintiff's x-ray showed spondylolysis with grade 3

19   anterolisthesis of L-5 on S-1. (A.R. at 176.)

20        Dr. Malabed-Verona completed a physical capacities

21   assessment on April 29, 2002. (A.R. at 177-178.) She opined that

22   Plaintiff could only stand, walk, and sit two to four hours a day

23   for up to two hours at a time. (A.R. at 177.) Dr Malabed-Verona

24   further opined that Plaintiff was restricted by environmental

25   factors relating to her asthma (A.R. at 177) and could only

26   occasionally lift ten pounds. (A.R. at 178.)

27        Clinical psychologist Steven C. Swanson, Ph.D., evaluated

28   and examined Plaintiff on November 23, 2002. (A.R. at 157-160.)

                                       4

Dr. Swanson noted that Plaintiff was fully oriented to person, time, place, and situation. (A.R. at 158.) Plaintiff reported feeling very depressed, but Dr. Swanson observed no evidence of delusion, disorder of perception, psychotic process, suicidal or homicidal ideation, or vegetative signs of depression. (A.R. at 159.) Dr. Swanson observed that Plaintiff maintained satisfactory attention and concentration, her judgment and insight were intact, and her emotional and mental functioning were within normal limits. (A.R. at 159.) Dr. Swanson diagnosed no psychological disorder.

Dr. Swanson assessed Plaintiff with a Global Assessment of Functioning (GAF) score of seventy and noted that there was no indication of significant emotional distress. (A.R. at 159-160.) He opined that Plaintiff could maintain concentration; relate appropriately to others in a job setting; understand, carry out, and remember simple instructions; and respond appropriately to usual work situations and changes in routines. (A.R. at 160.) He further concluded that there were no substantial restrictions on her daily activities and that difficulties in social functioning were not present. (A.R. at 160.)

Consultative internist Sherry Lopez, D.O., examined and evaluated Plaintiff on December 21, 2002. (A.R. at 198-202.) Dr. Lopez noted Plaintiff's history of low back pain, diabetes, and hypertension, but she also noted that the diabetes and hypertension were controlled with medication, and that Plaintiff had not been hospitalized. (A.R. at 198.) Dr. Lopez observed no muscle spasms, joint tenderness, or effusion. (A.R. at 201.) She diagnosed low back pain, diabetes, and hypertension (A.R. at

201), and she noted that Plaintiff had anterolisthesis in her lower back. (A.R. at 202.) She also noted that Plaintiff complained of a small amount of intermittent numbness in her hands, but she stated that it was not present upon examination. (A.R. at 201.) Dr. Lopez further noted that Plaintiff's behavior was totally appropriate. (A.R. at 201.)

Dr. Lopez concluded that Plaintiff could stand and walk about six hours a day, but she would need to sit every hour for ten minutes; Plaintiff could sit six hours per day but would need to alternate between sitting and standing; Plaintiff could lift ten pounds frequently and twenty pounds occasionally; and Plaintiff had no manipulative limitations. (A.R. at 202.)

On February 11, 2003, DDS medical consultant Antoine Dipsia, M.D., evaluated Plaintiff based on his review of her medical records. (A.R. at 207-214.) Dr. Dipsia concluded that Plaintiff could lift ten pounds frequently and twenty pounds occasionally; she could stand, walk, and sit six hours per day with normal breaks and the ability to shift positions as needed; she was limited to postural activities only occasionally; she had no visual or communicative limitations; and she should avoid exposure to extreme cold and concentrated dusts, fumes, and gases. (A.R. at 208-211.) He further found that Plaintiff should not engage in forceful pushing, pulling, or repetitive use of her right leg (A.R. at 208), and she had limited manipulative capabilities. (A.R. at 211.) Dr. Dipsia opined that Dr. Malabed-Verona's physical capacities assessment of April 29, 2002, was too restrictive because the medical record did not support a total inability to work. (A.R. at 213.)

On February 13, 2003, psychiatrist Susan Regan, M.D., evaluated Plaintiff based on her review of Plaintiff's medical records. (A.R. at 203-206.) Dr. Reagan concluded that no medically determinable impairment existed. (A.R. at 203.)

Plaintiff's treating records from Golden Valley Health Center, dated April through October 2003, indicate that she was being treated for depression by licensed clinical social worker Cesar Garcia. (A.R. at 143, 218-230.) Mr. Garcia diagnosed major depressive disorder. (A.R. at 225-230.) On October 6, 2003, Mr. Garcia completed a medical source statement. (A.R. at 220-223.) He opined that Plaintiff was moderately limited in her understanding, memory, sustained concentration, persistence, and social interaction (A.R. at 221-224), but she was only mildly limited in her ability to carry out simple instructions and ask questions. (A.R. at 221.) Mr. Garcia further opined that Plaintiff was markedly limited in her ability to understand and remember detailed instructions and maintain regular attendance. (A.R. at 221.) He stated that a routine, repetitive, simple entry-level job would serve as a stressor and exacerbate Plaintiff's psychological symptoms, and that Plaintiff would be unable to complete a workday at least three or four times per month. (A.R. at 222.)

A polysomnography study conducted on July 31, 2003, showed that Plaintiff suffered from obstructive sleep apnea syndrome and periodic limb movement disorder. (A.R. at 231.)

On the day of the hearing, Dr. Malabed-Verona completed an RFC assessment in which she diagnosed diabetes, low back pain, hypertension, and abnormal weight gain. (A.R. at 241-44.) She

1   stated that emotional factors did not contribute to Plaintiff's
2   symptoms and functional limitations, and that Plaintiff's pain
3   seldom interfered with her attention and concentration. (A.R. at
4   242.) She opined that Plaintiff could only sit for fifteen
5   minutes, stand for twenty minutes, and sit, stand, and walk for
6   less than two hours per day total. (A.R. at 242-243.) She further
7   opined that Plaintiff would need to take a break every fifteen
8   minutes, would need a job in which she could shift positions at
9   will, could rarely lift ten pounds, and had postural and
10  manipulative limitations. (A.R. at 243-44.)

11      II. <u>Plaintiff's Testimony</u>

12      At the administrative hearing, Plaintiff testified that she
13  had back problems, her back pain was constant most of the time,
14  it went down her right leg and caused hip pain, and she got back
15  spasms everyday. (A.R. at 42-43.) She had been diagnosed with
16  diabetes in 1998, which caused her to feel fatigued and
17  depressed, and to have blurred vision, dry mouth, and numbness in
18  her right leg. (A.R. at 43-44.) She had sleep apnea and used a
19  continuous positive airway pressure (CPAP) machine to sleep at
20  night (A.R. at 44-45); she had high blood pressure, which caused
21  dizziness, fatigue, and fear (A.R. at 45-46); she had glaucoma
22  and could not see as well as she used to (A.R. at 48); she
23  suffered from depression (A.R. at 46); and she had from a weight
24  problem. (A.R. at 52.) Plaintiff had previously taken muscle
25  relaxers but stopped due to their side effects. (A.R. at 53.)

26      Plaintiff stated that she raised four children and that two
27  of them still lived with her. (A.R. at 46.) Her daughter helped
28  her around the house and with taking a shower and putting on her

shoes and socks. (A.R. at 49-51.) She could drive, walk about one
block, bend, and sit for fifteen to twenty minutes. (A.R. at
49-50.) Aside from needing help with her shoes and socks, she
could dress herself. (A.R. at 51.) Although Plaintiff testified
that she could only lift three to five pounds, she later stated
that she could lift a gallon of milk. (A.R. at 50-51.)

       III. <u>Vocational Expert's Testimony</u>

       Vocational expert (VE) Jose Chaparro testified at the
hearing. (A.R. at 52-57.) He stated that Plaintiff had no past
relevant work and had not engaged in any substantial gainful
activity. (A.R. at 53.) The ALJ then asked whether performance of
any work would be possible by an individual with the same age,
education, and work background as Plaintiff who could frequently
lift ten pounds and stand and walk at least two hours; sit for
six hours; was restricted to sedentary work; could occasionally
climb ramps, stairs, ladders, ropes, and scaffolds; occasionally
crouch and crawl; should avoid exposure to fumes; and would need
to alternate between sitting and standing during the day. (A.R.
at 53.) The VE responded that such a person could perform the
light exertional level jobs of cashier II and ticket taker,
eroded to a sedentary level. (A.R. at 54.)

       Plaintiff's counsel then proposed several hypothetical
questions to the VE .(A.R. at 55-57.) First he asked whether an
individual who had certain limitations on grasping, gripping, and
fine manipulation would be able to perform either job. The VE
responded "No." (A.R. at 55.) The VE also testified that an
individual who had to take a break every fifteen minutes, or who
be would be absent more than four days a month, could not perform

1  either the cashier II or the ticket taker job. (A.R. at 56.)

2  Finally, Plaintiff's counsel asked a hypothetical incorporating

3  all of Plaintiff's mental limitations as diagnosed by Mr. Garcia,

4  to which the VE responded that an individual with such

5  limitations could not perform either job. (A.R. at 56-57.)

6  <u>Scope and Standard of Review</u>

7       Congress has delineated a limited scope of judicial review

8  of the Commissioner's decision to deny benefits under Title XVI

9  of the Social Security Act. In reviewing findings of fact with

10  respect to such determinations, the Court must determine whether

11  the decision of the Commissioner is supported by substantial

12  evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than

13  a mere scintilla," <u>Richardson v. Perales</u>, 402 U.S. 389, 402

14  (1971), but less than a preponderance, <u>Sorenson v. Weinberger</u>,

15  514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant

16  evidence as a reasonable mind might accept as adequate to support

17  a conclusion." <u>Richardson</u>, 402 U.S. at 401. The Court must

18  consider the record as a whole, weighing both the evidence that

19  supports and evidence that detracts from the Commissioner's

20  conclusion; it may not simply isolate a portion of evidence that

21  supports the decision. <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th

22  Cir. 1985). It is immaterial that the evidence would support a

23  finding contrary to that reached by the Commissioner; the

24  determination of the Commissioner as to a factual matter will

25  stand if supported by substantial evidence because it is the

26  Commissioner's job, and not the Court's, to resolve conflicts in

27  the evidence. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 (9th

28  Cir 1975).

1    In weighing the evidence and making findings, the

2    Commissioner must apply the proper legal standards. Burkhart v.

3    Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

4    review the whole record and uphold the Commissioner's

5    determination that the claimant is not disabled if the

6    Commissioner applied the proper legal standards, and if the

7    Commissioner's findings are supported by substantial evidence.

8    See, Sanchez v. Secretary of Health and Human Services, 812 F.2d

9    509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If

10   the Court concludes that the ALJ did not use the proper legal

11   standard, the matter will be remanded to permit application of

12   the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th

13   Cir. 1987).

14                              Analysis

15        I. Disability

16        In order to qualify for benefits, a claimant must establish

17   that she is unable to engage in substantial gainful activity due

18   to a medically determinable physical or mental impairment which

19   has lasted or can be expected to last for a continuous period of

20   not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A

21   claimant must demonstrate a physical or mental impairment of such

22   severity that the claimant is not only unable to do the

23   claimant's previous work, but cannot, considering age, education,

24   and work experience, engage in any other kind of substantial

25   gainful work which exists in the national economy. 42 U.S.C.

26   1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th

27   Cir. 1989). The burden of establishing a disability is initially

28   on the claimant, who must prove that the claimant is unable to

return to his or her former type of work; the burden then shifts
to the Commissioner to identify other jobs that the claimant is
capable of performing considering the claimant's residual
functional capacity, age, education, and last fifteen years of
work experience. <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir.
1990).

The regulations provide that the ALJ must make specific
sequential determinations in the process of evaluating a
disability: (1) whether the applicant engaged in substantial
gainful activity since the alleged date of the onset of the
impairment, (2) whether solely on the basis of the medical
evidence the claimed impairment is severe, that is, of a
magnitude sufficient to limit significantly the individual's
physical or mental ability to do basic work activities; (3)
whether solely on the basis of medical evidence the impairment
equals or exceeds in severity certain impairments described in
Appendix I of the regulations; (4) whether the applicant has
sufficient residual functional capacity, defined as what an
individual can still do despite limitations, to perform the
applicant's past work; and (5) whether on the basis of the
applicant's age, education, work experience, and residual
functional capacity, the applicant can perform any other gainful
and substantial work within the economy. <u>See,</u> 20 C.F.R. §
416.920.

II. <u>Plaintiff's Subjective Claims</u>

Plaintiff argues that the ALJ failed to provide clear and
convincing reasons, supported by substantial evidence, for
discrediting Plaintiff's subjective claims regarding the severity

12

of symptoms relating to her impairment.

The existence and severity of a person's reaction to a physical ailment, such as pain, are subjective phenomena, the extent of which cannot be objectively measured. Byrnes v. Shalala, 60 F.3d 639, 642 (9th Cir. 1995). In order to reject a claimant's subjective complaints, the ALJ must provide specific, cogent reasons for the disbelief. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Once the claimant introduces medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the subjective symptoms, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence such as objective medical findings. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Unless there is affirmative evidence tending to show that the claimant is malingering, the reasons for rejecting the claimant's testimony must be clear and convincing, and the ALJ must set forth the rejection by identifying what testimony is not credible and what evidence undermines the claimant's complaints. Lester v. Chater, 81 F.3d at 834. The findings of the adjudicator must be properly supported by the record and must be sufficiently specific to allow a reviewing court to conclude that the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-46; Byrnes v. Shalala, 60 F.3d at 641-42 (9th Cir. 1995); see, 20 C.F.R. § 416.929(c).

Social Security Ruling 96-7p directs the adjudicator to consider not only objective medical evidence of signs, laboratory

13

findings, and medical opinions, but also the following factors when assessing the credibility of an individual's statements:

>    1. The individual's daily activities;
>    2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>    3. Factors that precipitate and aggravate the symptoms;
>    4. The type, dosage, effectiveness, and adverse side effects of any medication for pain or other symptoms;
>    5. Treatment, other than medication, for relief of pain or other symptoms;
>    6. Any measures other than treatment used by the individual to relieve the pain or other symptoms; and
>    7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

See also Bunnell v. Sullivan, 947 F.2d at 346.

Here, the ALJ found incredible Plaintiff's subjective claims that her back pain, muscle spasms, and numbness in her right leg rendered her unable to walk for more than one block, sit for more than fifteen to twenty minutes, lift more than five pounds, or stand for prolonged periods. (A.R. at 20, 23.) The ALJ rejected these claims in part because there were no significant objective findings to warrant a finding of disability. (A.R. at 23.) Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997), it is one factor which may be considered with others. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Morgan v. Commissioner 169 F.3d 595, 600 (9th Cir. 1999).

The record contains substantial evidence supporting the ALJ's reasoning. The clinical findings revealed no evidence of motor, reflex, or significant sensory abnormalities; no joint tenderness or effusion; and no decreased muscle strength, bulk,

tone, or reflexes. (A.R. at 198-202.) X-rays showed no indications of disc herniations or spinal canal stenosis. (A.R. at 198-202.) Furthermore, there was no objective evidence of an inability to ambulate effectively, any musculoskeletal dysfunction of any major weight-bearing joint, or any cardiovascular or respiratory disorder. Contrary to Plaintiff's subjective claims, Dr. Lopez concluded that Plaintiff could sit or stand for about six hours out of an eight-hour workday. (A.R. at 200, 202.) Furthermore, Dr. Lopez and the state agency physicians assessed limitations consistent with the ability to perform a significant range of light work. (A.R. at 202, 208-213.) Although Dr. Malabed-Verona noted some reduced range of motion of the lumbar spine, this was based on Plaintiff's subjective discomfort rather than objective clinical findings. (A.R. at 180.) The ALJ's conclusion that there was weak objective support for Plaintiff's subjective claims is thus supported by substantial evidence.

It is appropriate for an ALJ to consider use of conservative treatment and extent of efforts to obtain relief. Soc. Sec. Ruling 96-7p and 20 C.F.R. § 416.929(c)(4)(1)(vii); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d at 346 (9th Cir. 1991); Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

Here, the ALJ found that although Plaintiff complained of disabling back pain, she stopped taking her pain medication and did not seek alternative forms of pain therapy. (A.R. at 23, 43.) There was no indication that Plaintiff's pain medication was ineffective, although Plaintiff complained of side effects. (A.R.

at 43.) Plaintiff's treating physician, Dr. Malabed-Verona, prescribed exercise, a low-calorie diet, and pain medication. (A.R. at 180.) Although there are indications in the record that Plaintiff's physician was considering a gastric bypass (A.R. 176, 179), there is no evidence that the operation was ever performed. Accordingly, the record contains substantial evidence supporting the conclusion that Plaintiff's treatment was essentially conservative in nature, and that the extent of Plaintiff's efforts to obtain relief was inconsistent with her claims of severe pain.

The ALJ also noted that Plaintiff's testimony regarding her subjective estimations of functional capacity were both internally inconsistent and inconsistent with the functional restrictions imposed by Plaintiff's treating physician. (A.R. at 23.) Internal contradictions in a claimant's testimony are a permissible basis upon which to reject testimony regarding subjective symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). Inconsistencies between a claimant's subjective complaints and restrictions assigned by a treating physician are also grounds to discredit a claimant's testimony. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995). Plaintiff testified that she could lift only three to five pounds at most. (A.R. at 50.) However, as the ALJ noted, she then testified that she could lift a gallon of milk, contradicting her self-imposed limitation. (A.R. at 23, 51.) Plaintiff also testified that she could sit for only fifteen minutes before experiencing severe pain (A.R. at 50), but her treating physician, Dr. Malabed-Verona, opined that she could sit for up to two hours at a time. (A.R. at 178.) The

record contains substantial evidence supporting the ALJ's conclusion that Plaintiff's testimony was internally inconsistent and inconsistent with the limitations  assigned by her treating physician.

The ALJ found that Plaintiff had a normal range of daily activities, including cooking, cleaning, and washing dishes, that were inconsistent with her alleged disabilities. (A.R. at 23.) Plaintiff testified as follows:

> Q: And who does the cleaning in your home?
> A: I have a daughter, my daughter's 23, she does, she comes over and she helps me more. Out of everybody, she's the one that I really rely on her, she comes and she cleans the house, and she cooks for me. And I have some kitty cats, and she'll clean the cat litter for me, and she helps me in the shower, and she helps take care of me.
> Q: And the laundry?
> A: Yeah, she'll do the laundry.
> Q: Dishes?
> A: Dishes.
> Q: Cat litter?
> A: Yeah.
> Q: And what about the cooking?
> A: Yeah, she helps with the cooking.
> Q: And does your son help, or anybody else help?
> A: Yeah, they help too, they don't do as much as she does, but they do help. They have their little chores. Like she has them to do, to help her.
> Q: Okay. And do you drive?
> A: I have a driver's license, I don't drive a lot no more. But if I need to, if I have to I'll drive.

(A.R. at 49.)

Where evidence is inconclusive, resolution of credibility issues and conflicts in the testimony are functions solely of the Commissioner. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). To the extent that evidence is inconsistent, conflicting, or ambiguous, it is the responsibility of the ALJ to resolve any conflicts and ambiguity. Morgan v. Commissioner, 169 F.3d 595, 603 (9th Cir. 1999). Reference to Plaintiff's testimony clearly

reflects that Plaintiff's daughter performed a significant range of activities in Plaintiff's home. Plaintiff initially stated that her daughter "cleans the house... and cooks for me." However, she then referred to her daughter and other family members as "helping" with cooking and general activities of daily living. Based on this testimonial dichotomy, one reasonable inference is that Plaintiff was helped, and therefore she herself engaged in some cooking, cleaning, and washing dishes. However, the testimony does not establish to what extent Plaintiff engaged in the activities in question. In order for a claimant's activities to constitute a basis for rejecting subjective complaints, the claimant must be able to engage in activities of daily living to the extent that he or she spends a substantial part of the day engaged in pursuits involving the performance of physical functions that are transferable to the work setting. Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). Although it is the ALJ's prerogative to resolve ambiguities, it is questionable whether the record is sufficient here to support a conclusion regarding the extent of Plaintiff's activities.

However, even if the record were to lack substantial evidence supporting the inference that Plaintiff sufficiently engaged in the daily activities in question, the ALJ's credibility determination is nevertheless supported by other clear and convincing reasons, in turn supported by substantial evidence in the record, as discussed above. Cf., Batson v. Commissioner of the Social Security Administration, 359 F.3d

18

1190, 1196 (9th Cir. 2004). Accordingly, the Court rejects
Plaintiff's challenge to the ALJ's credibility determination.

   III. <u>Medical Opinions</u>

   Plaintiff argues that the ALJ failed to give specific and
legitimate reasons, supported by substantial evidence, for
rejecting the opinions of Dr. Malabed-Verona and Mr. Garcia.

          A. <u>Dr. Malabed-Verona</u>

   Plaintiff points to Dr. Malabed-Verona's findings, including
lower back and shoulder pain, spondylolysis with grade 3
anterolisthesis of L-5 on S-1, and decreased vibratory sense in
the lower extremities. Plaintiff argues that the ALJ ignored
these findings and improperly rejected Dr. Malabed-Verona's
assessment of Plaintiff's residual functional capacity, which
limited Plaintiff to sitting for fifteen minutes, standing for
twenty minutes, and sitting or standing for a total of less than
two hours in an eight-hour workday. (A.R. at 243-244.)

   The opinion of a treating physician is entitled to deference
because of a greater opportunity to observe the patient as an
individual and because the purpose of the relationship is to cure
the patient. <u>Morgan v. Commissioner of Social Sec. Admin.</u>, 169
F.3d 595, 600 (9th Cir. 1999). However, an ALJ may disregard a
treating physician's opinion whether or not it is contradicted.
<u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989).

   A treating physician's opinion that is controverted by other
medical opinions may be rejected by an ALJ only if specific,
legitimate reasons for doing so are provided and supported by
substantial evidence in the record. <u>Rodriguez v. Bowen</u>, 876 F.2d
759, 762 (9th Cir. 1989). This burden is met by stating a detailed

19

and thorough summary of the facts and conflicting clinical evidence, stating the interpretation of the evidence, and making findings. Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir 1986). A failure to set forth a reasoned rationale for disregarding a particular treating physician's findings is legal error. Cotton v. Bowen, 799 F.2d at 1408.

The medical opinion of a non-treating doctor may be relied upon instead of that of a treating physician only if the ALJ provides specific and legitimate reasons supported by substantial evidence in the record. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). The contradictory opinion of a nontreating but examining physician constitutes substantial evidence, and may be relied upon instead of that of a treating physician, where it is based on independent clinical findings that differ from those of the treating physician. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). The opinion of a nontreating, nonexamining physician can amount to substantial evidence as long as it is supported by other evidence in the record, such as the opinions of other examining and consulting physicians, which are in turn based on independent clinical findings. Andrews v. Shalala, 53 F.3d at 1041. The findings of a nontreating, nonexamining physician can amount to substantial evidence so long as other evidence in the record supports those findings. Saelee v.Chater, 94 F.3d 520, 522 (9th Cir. 1996).

Here, the ALJ relied on the opinions of Dr. Lopez and two state agency physicians acting as medical consultants, who opined that Plaintiff possessed the capacity to perform a substantial

range of light work. (A.R. at 24.) The ALJ stated in pertinent part:

> The opinion of Dr. Malabed-Verona is rejected, as there
> is no reasonable or objective medical basis to restrict
> her beyond a broad range of light work, as there is no
> restricted lumbar range of motion, muscle spasms,
> trigger points, antalgic gait or any motor, reflex or
> significant sensory abnormalities, as previously
> discussed (citation omitted). Moreover, her opinion is
> contradicted by Dr. Lopez who actually examined the
> claimant. It appears Dr. Malabed-Verona's opinion is
> based on an uncritical acceptance of the subjective
> complaints at face value.

(A.R. at 24.)

Dr. Malabed-Verona opined in her assessment of Plaintiff's residual functional capacity that Plaintiff could stand and walk less than two hours and sit less than two hours in an eight-hour workday due to a significantly reduced range of motion of the lumbar spine, and she could rarely lift and could carry only less than ten pounds. (A.R. at 242.) However, Dr. Malabed-Verona stated that Plaintiff's pain was seldom severe enough to interfere with attention and concentration. (A.R. at 242.)

A physical or mental impairment must result from anatomical, physiological, or psychological abnormalities that can be demonstrated by acceptable clinical diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(D). Where a treating physician's medical opinion is based largely on the Plaintiff's subjective description of his or her symptoms, and the ALJ has properly discredited the Plaintiff's claims regarding those subjective symptoms, the ALJ may reject the treating physician's medical opinion. Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989).

The record supports the ALJ's reasoning in rejecting Dr. Malabed-Verona's opinion due to uncritical acceptance of

Plaintiff's subjective complaints. The ALJ's rejection of Plaintiff's subjective claims of pain and limited functioning has been previously examined; accordingly, Plaintiff's subjective complaints would not require a conclusion contrary to that of the ALJ. Review of Dr. Malabed-Verona's treatment notes reveals Plaintiff complained of pain in different parts of the body, including the lower back and hips, from March 2001 to May 2002 (A.R. at 176, 179, 180, 185), and neck and shoulder pain in November 2002 (A.R. at 164). However, there were very few objective clinical findings supporting those complaints. In April 2002, Dr. Malabed-Verona reported, "Patient continues to have pain in the lower back radiating down the right leg unabling (sic) her to work." (A.R. at 176.) However, as specifically noted by the ALJ (A.R. at 24), Dr. Malabed-Verona reported in October 2003 that Plaintiff's pain was seldom severe enough to interfere with Plaintiff's attention or concentration. (A.R. at 250.) These factors support the ALJ's conclusion that Dr. Malabed-Verona's medical opinion was based on uncritical acceptance of Plaintiff's subjective complaints. Accordingly, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Malabed-Verona's opinion.

The ALJ also rejected Dr. Malabed-Verona's opinion regarding Plaintiff's residual functional capacity due to lack of objective evidence and conflicting opinions from Dr. Lopez and the state agency physicians. (A.R. at 24.) An ALJ may reject the medical opinion of a claimant's treating physician where the opinion is unsupported by clinical findings and is also contradicted by the opinions of other examining physicians. Young v. Heckler, 803

F.2d 963, 968 (9th Cir. 1986). The opinion of a nontreating, nonexamining physician can amount to substantial evidence as long as it is supported by other evidence in the record, such as the opinions of other examining and consulting physicians, which are in turn based on independent clinical findings. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

The record supports the ALJ's rejection of Dr. Malabed-Verona's opinion due to lack of clinical findings and the conflicting opinions of Dr. Lopez, an examining physician, and two nonexamining state agency physicians. Dr. Malabed-Verona's treatment notes, which date from March 2001 through November 2002, reveal only one notation regarding a reduced range of motion of the lower spine, and it was due to subjective discomfort rather than any objective finding. (A.R. at 180.) Furthermore, Dr. Malabed-Verona's notes show no indication of either subjective complaints or objective signs of lower back, hip, or other functional limitations from May 2001 to March 2002. (A.R. at 181-182.) Plaintiff relies heavily on the residual functional capacity assessment questionnaire completed by Dr. Malabed-Verona on October 29, 2003, the day of Plaintiff's hearing. (A.R. at 243.) However, the record contains no evidence indicating that Dr. Malabed-Verona actually examined Plaintiff or made objective clinical findings at that time even though Dr. Malabed-Verona alleged that Plaintiff suffered from numerous conditions that were not present in her treatment reports from 2001 and 2002. (A.R. at 243-44.) Furthermore, the record contains no evidence showing that Dr. Malabed-Verona treated Plaintiff or made objective findings after November 2002. Thus the ALJ's

1  rejection of Dr. Malabed-Verona's opinion for lack of objective
2  clinical findings was supported by substantial evidence.

3       The ALJ also rejected Dr. Malabed-Verona's opinion based on
4  the medical opinion of Dr. Lopez, who examined Plaintiff in
5  December 2002. (A.R. at 198.) As noted by the ALJ (A.R. at 24),
6  Dr. Lopez opined that Plaintiff could perform a full range of
7  light work with only occasional bending, stooping, and crouching.
8  (A.R. at 201-2.) Dr. Lopez found no muscle spasms, trigger
9  points, joint tenderness, or effusion. (A.R. at 201.) In contrast
10 to Dr. Malabed-Verona's opinion, Dr. Lopez's examination showed
11 that Plaintiff's lumbar flexion was ninety degrees with extension
12 to twenty-five degrees (A.R. at 200.) Dr. Lopez also noted that
13 Plaintiff had a normal gait and did not require an assistive
14 device to ambulate. (A.R. at 200, 202.)

15      In addition to the objective clinical findings obtained by
16 Dr. Lopez during her physical examination of Plaintiff, the ALJ
17 relied on the opinions of the state agency physicians who
18 examined the medical evidence and evaluated Plaintiff's residual
19 functional capacity. (A.R. at 24.) The state agency physicians
20 assessed a residual functional capacity consistent with the
21 assessment by Dr. Lopez. (A.R. at 203-14.) Accordingly, the ALJ
22 stated specific and legitimate reasons, supported by substantial
23 evidence, for rejecting the controverted medical opinion of Dr.
24 Malabed-Verona.

25           B. Mr. Garcia

26      Plaintiff argues that the ALJ failed to discredit adequately
27 the opinion of Mr. Garcia, L.C.S.W., regarding Plaintiff's mental
28 condition.

Medical sources are divided into acceptable medical sources, including licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 416.913(a). In addition, "other sources" are recognized for the more limited purpose of showing the severity of impairments and the ability to work. They include medical sources not previously listed, such as nurse-practitioners, physicians' assistants, naturopaths, chiropractors, etc.; educational personnel; public and private social welfare agency personnel; and other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy.) 20 C.F.R. § 416.913(d). An "other source" may be given less weight than an opinion from acceptable medical sources. Id. However, if an ALJ seeks to discredit the testimony of an "other source", he or she must give reasons that are germane to that source. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

In the present case, the ALJ found that Plaintiff suffered from a depressive disorder apparently based on her physical condition, but rejected Mr. Garcia's opinion that Plaintiff was unable to function effectively in a workplace setting due to her depression. (A.R. at 23-24.) The ALJ stated several reasons for rejection germane to Mr. Garcia's opinion as an "other source." First, the ALJ noted that Mr. Garcia's opinion was contradicted by the opinion of Dr. Swanson, an examining psychologist, who found no vegetative signs of depression and noted that Plaintiff could maintain appropriate attention and concentration and could relate properly to others. (A.R. at 17, 24, 157-62.) The ALJ

1   properly noted that Dr. Swanson was an expert in his field. (A.R.
2   at 24.) The ALJ further noted that Mr. Garcia's opinion was
3   unsupported by any mental status findings. (A.R. at 24.) Finally,
4   Mr. Garcia's opinion was contradicted by the observations of Dr.
5   Lopez, who noted that Plaintiff was pleasant and appropriate in
6   behavior during her examination. (A.R. at 201.)

7       Because Mr. Garcia was not an acceptable medical source, the
8   ALJ was free to give less weight to his opinion regarding the
9   Plaintiff's mental condition and capacity, and conversely to
10  allocate greater weight to the medical opinion of Dr. Swanson.
11  Dodrill, 12 F.3d at 919. Dr. Swanson performed a detailed
12  examination of Plaintiff and assigned a Global Assessment of
13  Functioning (GAF) score of seventy, which meant that Plaintiff
14  had some mild difficulty in functioning but was generally
15  functioning pretty well.[2] (A.R. at 157-62.) Dr. Swanson opined
16  that Plaintiff did not have difficulties in maintaining social
17  functioning and could appropriately function in a work setting.
18  (A.R. at 160.) Accordingly, the ALJ properly rejected Mr.
19  Garcia's opinion by stating reasons germane to the testimony that
20  were supported by substantial evidence.

21      IV. Vocational Evidence

22      Plaintiff argues that the ALJ's conclusion that Plaintiff
23  could perform work in the national economy lacks substantial
24  evidence and is erroneous as a matter of law.

25      A. Limitation Hypothetical

26      Plaintiff asserts that the hypothetical set forth by the ALJ

27

28      [2]American Psychiatric Association, Diagnostic and
    Statistical Manual of Mental Disorders , p. 32 (4th ed. 1994).

did not incorporate all of Plaintiff's established limitations, specifically Plaintiff's obesity and depressive disorder. A hypothetical question to a VE must include the medical assumptions that are supported by substantial evidence in the record that reflects each of a claimant's impairments. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001). The question should include all of the claimant's limitations. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). To constitute substantial evidence of work that a claimant can perform, the hypothetical must be accurate, detailed, and supported by the medical record. Tacket v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999.).

The ALJ posed the following question to the VE:

I want you to assume we have a hypothetical person the same age, education, and work background as the Claimant. The person can lift occasionally ten pounds, frequently ten pounds. Can stand and walk at least two hours, in eight. Can sit around six hours in eight. Would be restricted to sedentary work. Can occasionally climb, ramps, stairs, ladders ropes and scaffold. Can occasionally stoop, crouch and crawl. Should avoid exposure to fumes. Would need to sit once every hour for ten minutes, if standing. Would need to be able to alternate between sitting and standing during the day.

(A.R. at 53.) The Court notes that the hypothetical incorporates all functional limitations included in the residual functional capacity adopted by the ALJ. (A.R. at 24.) While the ALJ did find that Plaintiff's impairments included obesity and depressive disorder (A.R. at 20), the residual functional capacity established by the ALJ was supported by substantial evidence, discussed above, in the form of medical opinions from Drs. Lopez and Swanson. Plaintiff's argument on this issue wrongly focuses on the particular impairments themselves rather than the ALJ's

1  assessment of the functional limitations stemming from

2  Plaintiff's impairments.

3      In regard to Plaintiff's depressive disorder, the ALJ relied

4  on Dr. Swanson's medical opinion in assessing Plaintiff's

5  residual functional capacity. (A.R. at 23-24.) Dr. Swanson found

6  that Plaintiff did not have a mental condition that would

7  preclude her from functioning appropriately in work settings.

8  (A.R. at 160.) He also assigned Plaintiff a GAF of seventy. (A.R.

9  at 158-162.)  Dr. Swanson arrived at this conclusion based on

10 tests and clinical findings obtained during an examination. (A.R.

11 157-162.) As previously discussed, the ALJ's assessment of the

12 functional limitations associated with Plaintiff's depressive

13 disorder is supported by substantial evidence.

14     Where there is no evidence of limitations or restrictions

15 resulting from obesity, an ALJ need not include the impairment

16 itself in a hypothetical directed towards a VE. Burch v.

17 Barnhart, 400 F.3d 676, 681-684 (9th Cir. 2005). In regard to

18 Plaintiff's obesity, Dr. Lopez opined only that "her weight

19 certainly does not help" with her back pain (A.R. at 202), but

20 did not link Plaintiff's obesity to her assessment of Plaintiff's

21 functional status. Dr. Malabed-Verona's assessment of Plaintiff's

22 residual functional capacity does not mention obesity as an

23 objective sign or symptom of Plaintiff's functional limitations.

24 (A.R. at 249-250.) Furthermore, Plaintiff does not point to any

25 specific evidence in the record to demonstrate that Plaintiff's

26 functional limitations are a result of obesity. Because the ALJ

27 properly established Plaintiff's residual functional capacity,

28 and the record contains no evidence of limitations specifically

1  resulting from obesity, the ALJ did not err in excluding the
2  impairment itself in his hypothetical.

3      The ALJ properly formulated the hypothetical based only on
4  functional limitations supported by substantial evidence in the
5  record. All limitations included in the ALJ's determination of
6  Plaintiff's residual functional capacity were included in the
7  hypothetical question directed towards the vocational expert.
8  Accordingly, the Court holds that the ALJ did not err in
9  formulating the hypothetical.

10         B. <u>Expert Vocational Testimony</u>

11     Plaintiff argues that the ALJ's finding that Plaintiff could
12  perform work existing in substantial numbers in the national
13  economy was not supported by substantial evidence. Specifically,
14  Plaintiff asserts that the VE did not properly testify to
15  alternative work that Plaintiff could perform because the jobs in
16  question were of a different exertional level from that set forth
17  in the Dictionary of Occupational Titles (DOT).

18     Although the Commissioner routinely relies on the DOT in
19  determining the ability to perform alternative work, the
20  Commissioner may take administrative notice of any reliable job
21  information, including the services of a VE. <u>Johnson v. Shalala</u>,
22  60 F.3d 1428, 1435 (9th Cir. 1995) (quoting <u>Whitehouse v.</u>
23  <u>Sullivan</u>, 949 F.2d 1005, 1007 (6th Cir. 1994)). While the DOT
24  classification of a job's exertional level is presumptively
25  valid, the presumption of validity may be rebutted by expert
26  testimony that contradicts the DOT insofar as the record contains
27  persuasive evidence to support the deviation. <u>Johnson v. Shalala</u>,
28  60 F.3d 1428, 1435 (9th Cir. 1995).

Persuasive evidence sufficient to permit a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. Light v. Social Security Admin., 119 F.3d 789, 793 (9th Cir. 1997). It is the ALJ's obligation to inquire about and elicit a reasonable explanation for a conflict between the occupational evidence provided by a VE and that supplied by the DOT. S.S.R. 00-4p at 2. Introduction of evidence of the characteristics of specific jobs available in the local area through the testimony of a vocational expert is appropriate, even though the job traits may vary from the way the job title is classified in the DOT. Johnson, 60 F.3d at 1435.

In the present case, the ALJ's hypothetical specified that Plaintiff would be limited to sedentary work. (A.R. at 53.) The VE testified that Plaintiff could perform the jobs of cashier II and ticket seller, both of which are classified as light exertion-level jobs by the DOT. (A.R. at 54.) However, in regard to the cashier II position, the vocational expert specifically stated, "This job I propose is considered light work, but with an erosion for fitting the factors of sedentary." (A.R. at 54.) The VE testified that the ticket seller position was normally light work, but a person with the same hypothetical limitations as Plaintiff would be able to perform the job. (A.R. at 54.) Furthermore, the VE testified that there were 750 cashier II jobs and 500 ticket seller jobs in the local central valley economy. (A.R. at 54.) The ALJ's inquiry and the VE's testimony as to the numerical availability of the two positions and their compatibility with Plaintiff's residual functional capacity

1  provide sufficient justification in the form of persuasive

2  evidence for deviation from the DOT. Light, 119 F.3d at 793.

3    Under these circumstances, the Court concludes that the

4  record reveals that the deviation from the DOT was based on

5  persuasive evidence regarding the specific functional

6  requirements and local availability of sedentary cashier II and

7  ticket seller positions known by the vocational expert.

8  Accordingly, the Court rejects Plaintiff's contention that there

9  was no substantial evidence supporting the ALJ's conclusion that

10  Plaintiff could perform work existing in substantial numbers in

11  the economy.

12    V.  Disposition

13    Based on the reasoning above, the Court concludes that the

14  ALJ's decision was supported by substantial evidence in the

15  record as a whole and was based on proper legal standards.

16    Accordingly, the Court AFFIRMS the administrative decision

17  of the Defendant Commissioner of Social Security and DENIES

18  Plaintiff's Social Security complaint.

19    The Clerk of the Court IS DIRECTED to enter judgment for

20  Defendant Jo Anne B. Barnhart, Commissioner of Social Security,

21  and against Plaintiff Anna Hughes.

22  IT IS SO ORDERED.

23  **Dated:   June 26, 2006**   **/s/ Sandra M. Snyder**

24  icido3     UNITED STATES MAGISTRATE JUDGE

25

26

27

28